# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| HALDEMAN-HOMME, INC., | Civil No. 06-3345 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| EDWARD DONAHOE, | |
| Defendant. | |

Douglas P. Seaton and Corie J. Tarara, **SEATON BECK & PETERS, PA**, 7300 Metro Boulevard, Suite 500, Minneapolis, MN 55439, for plaintiff.

Daniel J. Welch, **WICK & ROWE, LLC**, 1299 Farnam Street, Suite 1220, Omaha, NE, for defendant.

On August 10, 2006, plaintiff Haldeman-Homme, Inc. requested a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) to enjoin its former employee, defendant Edward Donahoe. On August 16, 2006, the Court granted a temporary restraining order intended to maintain the status quo until the Court could consider plaintiff's motion following full briefing and hearing. On August 30, 2006, the Court heard oral argument on plaintiff's motion.[1] For the reasons explained below, the Court grants in part plaintiff's motion for a temporary injunction.

---

[1] On August 31, 2006, defendant filed an affidavit of Edward Donahoe. The affidavit contains allegations that defendant's attorney raised at oral argument. This untimely filing had no impact on this Order. However, the affidavit will remain part of the record and the Court will not strike it as untimely.

**BACKGROUND**

Plaintiff Haldeman-Homme is a Minnesota corporation that distributes educational, industrial, and institutional equipment throughout the Midwest. Plaintiff employed defendant Edward Donahoe as a sales representative starting in July 2005. Defendant telecommuted from his home in Elkhorn, Nebraska, which was treated as a "field office" for plaintiff. Before working for plaintiff, defendant had 12 years of experience in the sale of industrial equipment. In his most recent employment before becoming employed by plaintiff, defendant sold industrial athletic equipment, such as gymnasium flooring and basketball hoops for schools, universities, and public and private gyms. In his work for plaintiff, defendant continued to sell the same products in the same territory he had serviced in his prior employment.

As a condition of his employment with plaintiff, defendant entered into a Non-Solicitation and Non-Competition Agreement. Pursuant to the terms of the Agreement, defendant agreed not to, among other things: 1) "do business with any person [or] business entity, which was a customer or prospective customer" of plaintiff at any time within three years prior to his termination; 2) "do business with any person or business entity who was a . . . dealer . . . or prospective dealer" of plaintiff within three years prior to his termination; and 3) "be employed by, any person or business entity engaged in a business whose products and/or services are substantially similar to or competitive with the products and/or services" offered by plaintiff within three years prior to his termination. The Agreement is geographically limited in scope to a 150-mile radius of

the Elkhorn, Nebraska field office, and temporally limited to a period of 12 months following the termination of his employment with plaintiff.

In July 2006, after one year of employment with plaintiff, defendant voluntarily resigned from his employment and began working for Midwest Floor Covering. Defendant's new employer is located within 150 miles of the Nebraska field office and provides similar services as plaintiff. After defendant resigned, he continued to close deals for plaintiff without compensation. Plaintiff also asserts, however, that in the last hours of his employment, defendant sent confidential information to his home email address, failed to pass on a customer lead to plaintiff, and destroyed the hard drive for the company laptop that he had been using.

On August 7, 2006, plaintiff filed a complaint in state court alleging six theories of recovery against defendant: breach of contract, misappropriation of confidential information and trade secrets, tortious interference with contract and interference with prospective business advantage, breach of duty of loyalty, conversion, and unfair competition. On August 10, 2006, plaintiff filed a motion for a temporary injunction, or in the alternative, a temporary restraining order. On August 15, 2006, defendant removed the case to this Court.

**ANALYSIS**

**I.    JURISDICTION**

Defendant argues that this Court should apply Nebraska law to the breach of contract claims because defendant worked from his home in Nebraska and the Agreement terms at issue have their effect there. Plaintiff argues that Minnesota law should be

applied because Minnesota is the home of plaintiff, and defendant signed the Agreement in Minnesota, regularly communicated with the Minnesota office, and occasionally traveled to Minnesota to execute sales agreements.

The parties do not dispute that the laws of both states may be constitutionally applied, but a conflict of laws analysis is necessary to determine if application of Minnesota law is preferable to Nebraska law. The Court must therefore apply Minnesota's conflict of laws rules. *See Nesladek v. Ford Motor Co.*, 46 F.3d 734 (8th Cir. 1995) (holding that federal courts sitting in diversity apply the forum state's conflict of laws rules). This analysis requires consideration of the five "choice-influencing" factors for each state where there is a substantive conflict of law. *See Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000).

Before applying the five "choice-influencing" factors, the Court must determine whether the choice of one state's law over another's creates an actual conflict that is likely to affect the outcome of this lawsuit. *Id.* There are some differences in the enforceability of non-compete agreements under Minnesota and Nebraska law. Under Minnesota law, a non-compete is enforceable if: consideration exists, the restriction is reasonable, and the legitimate interest of the plaintiff is greater than that of the defendant. *Ikon Office Solutions, Inc. v. Dale*, 170 F. Supp. 2d 892 (D. Minn. 2001). Under Nebraska law, a non-compete is valid only if it restricts the former employee from working for or soliciting the former employee's clients or accounts with whom the former employee actually did business and had personal contact. *Polly v. Ray D. Hiderman & Co.*, 407 N.W.2d 751 (Neb. 1987). Minnesota has adopted the "blue pencil

doctrine," which allows a court to modify an unreasonable non-compete agreement and enforce it only to the extent that it is reasonable. *Ikon Office Solutions, Inc.*, 170 F. Supp. 2d at 892. Nebraska courts have not applied the "blue pencil doctrine," but the Nebraska Supreme Court has reserved the right to do so. *Polly*, 407 N.W.2d at 751.

Although these minor differences in law are unlikely to affect the outcome of the lawsuit, the Court nevertheless applies the five choice-influencing factors and concludes that these factors point to application of Minnesota law. First, it is predictable that a Minnesota corporation would bring a lawsuit in Minnesota. Defendant had numerous contacts with Minnesota, including signing of the Agreement in Minnesota and regular communications with the Minnesota office. The second factor is not implicated because both states have sufficient contacts with the facts and issues being litigated. *See Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001) (quoting *Myers v. Gov't Employees Ins. Co.*, 225 N.W.2d 238, 242 (Minn. 1974)). The third factor is also of no consequence because federal courts have no trouble discerning and applying the law of a state other than Minnesota. *See Nodak Mut. Ins. Co.*, 604 N.W.2d at 95. In analyzing the fourth factor, courts should consider whether application of Nebraska law would be inconsistent with Minnesota's concept of fairness and equity. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 455 (Minn. Ct. App. 2001). Both states have similar policy reasons for their enforcement of non-compete agreements, but "Minnesota's governmental interests will most clearly be advanced by application of Minnesota law." *Wille v. Farm Bureau Mut. Ins. Co.*, 432 N.W.2d 784, 786 (Minn. App. 1988) (quotation omitted). This factor favors applying Minnesota law. Finally, the Court

need not reach the fifth factor, which should be applied only when the choice-of-law question remains unresolved after the other factors are considered. *See Nodak Mut. Ins. Co.*, 604 N.W.2d at 96.

Accordingly, the Court applies Minnesota law to this lawsuit.

## II.     INJUNCTIVE RELIEF

Plaintiff seeks to prevent defendant from contacting any individual or company which was a customer or manufacturer of plaintiff or which is a prospective customer or manufacturer of plaintiff. Plaintiff also requests that defendant be enjoined from using plaintiff's confidential and proprietary information.

Injunctive relief is appropriate where the moving party shows that: (1) there is a likelihood of success on the merits; (2) the movant will suffer irreparable harm absent the injunction; (3) the balance of harms favors the movant; and (4) the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).

### A.     Likelihood Of Success On The Merits
#### 1.     Breach of Contract Claims

Plaintiff asserts that it will prevail on the merits of its breach of contract claims against defendant because the non-compete agreement is enforceable and defendant is

breaching it. To establish that the non-compete is enforceable, plaintiff must demonstrate that the Agreement is supported by consideration, the restriction is reasonable, and the legitimate interest of the plaintiff is greater than that of the defendant. *Ikon Office Solutions, Inc. v. Dale*, 170 F. Supp. 2d 892 (D. Minn. 2001).

From the evidence submitted to the Court, it appears that the non-compete is supported by consideration because it was signed at the same time that the offer of employment was made. However, defendant at oral argument asserted that the documents were backdated to make it look as if they were all signed at the same time, but that in fact the non-compete agreement was presented to defendant only after he started working for plaintiff. Although there is a dispute of fact, it appears that at this time plaintiff has shown a reasonable likelihood of success of proving this element.

The parties do not dispute that the geographic limitation of a 150-mile radius from the Nebraska field office and the temporal limitation of one year are reasonable. The focus of the dispute is whether the activity prohibited by the agreement is related to legitimate business interests of plaintiff. Plaintiff has an interest in protecting the contacts, client relationships, and goodwill that defendant built for plaintiff during his employment with plaintiff. However, it appears that most of the sales made by defendant arose from customers and leads that defendant had acquired prior to starting employment with plaintiff. As such, this factor weighs towards granting a temporary injunction that is limited to those customers that defendant brought to plaintiff through new leads that developed during the time of his employment with plaintiff.

### 2. Misappropriation of Confidential and Trade Secrets Information Claims and Other Unfair Competition Claims

Plaintiff has also alleged claims against defendant under the Minnesota Uniform Trade Secrets Act, Minnesota Statutes §§ 325C.01-.08, and for tortious interference with a prospective business advantage, breach of duty of loyalty, and conversion. Plaintiff asserts that it entrusted defendant with numerous trade secrets and other confidential and proprietary information, such as customer, pricing, marketing, distribution, and financial information. Defendant responds that he is not in possession of any trade secrets related to customers or marketing because the customers served by defendant were his own customers that he had previously serviced.

Plaintiff would have a difficult time proving that information that defendant possessed prior to his employment with plaintiff could be protected as a trade secret or that use of this information could form the basis of unfair competition or tortious interference claims. Nevertheless, plaintiff has a reasonable likelihood of success in showing that defendant gained some confidential information during his employment with plaintiff, and that disclosure of this information is inevitable because defendant is working for a competitor. *See Pepsico, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). Based on these circumstances, plaintiff has a reasonable likelihood of success on its trade secrets, unfair competition, and tortious interference claims. This factor therefore weighs towards granting a temporary injunction that is limited to the information that defendant acquired during the time of his employment with plaintiff.

### B.     Threat of Irreparable Harm

Irreparable harm is often inferred from the breach of a non-compete agreement and threatened misappropriation of trade secrets or other confidential information. *See Cherne Industrial, Inc. v. Grounds & Assoc.*, 278 N.W.2d 81 (Minn. 1979); *Medtronic, Inc. v. Camp*, 2002 WL 539073, *2 (D. Minn. Feb. 6, 2002). As discussed above, it appears that defendant gained little if any confidential information during his employment with plaintiff because the customers served by defendant during his employment with plaintiff were his own customers that he had previously serviced. However, plaintiff has alleged that in the last hours of his employment, defendant sent confidential information to his home email address, failed to pass on a customer lead to plaintiff, and destroyed the hard drive for the company laptop that he had been using. If plaintiff is able to show that defendant's actions misused confidential information, they could form the basis for plaintiff to seek money damages. This factor also points to the granting of a temporary injunction that is limited to information and customers that defendant acquired during his employment with plaintiff.

### C.     The Balance of Harms

Plaintiff argues that if defendant is not enjoined, plaintiff will lose the benefit of its contracts, valuable goodwill, market position, and its customers. Defendant responds that if he is enjoined from contacting or soliciting his longtime customers for a period of 12 months he would likely be unable to continue in his career in this industry. The Court recognizes that defendant has been servicing customers in this sales territory for 13 years, and he has expended considerable effort developing these relationships. Because the

customers are typically school districts, universities, and private and public gyms, there are a limited number of potential customers. Further, the Court is not convinced that plaintiff has an entitlement to the market position and customers that it fears it will lose. It appears that defendant brought most of these customers to plaintiff, and plaintiff did not even have a representative in this sales territory prior to hiring plaintiff. As such, this factor does not point towards issuance of the broad injunction that plaintiff requests.

### D. The Public Interest

Public policy favors the enforcement of valid contracts and the protection of legitimate business interests. *E.W. Blanch Holdings v. Knudson*, 2001 WL 539073, at *6 (D. Minn. May 10, 2001). On the other hand, there is a public interest in preserving fair competition, especially when many of the customers involved are public entities. The Court concludes that this factor does not tilt strongly one way or the other.

### III. CONCLUSION

The Court concludes that the plaintiff is entitled to a limited temporary injunction to prevent irreparable harm until the merits of its claims are resolved at trial. The injunction is limited to confidential information that defendant gained during his employment with plaintiff, and to customers obtained through new leads he gained during his employment with plaintiff. If there is any disagreement as to what information and which customers are covered by this temporary injunction, the parties should meet and confer to attempt to resolve the matter.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion for a Temporary Injunction, or in the Alternative, a Temporary Restraining Order [Docket No. 2] is **GRANTED IN PART**.

2.     Defendant is enjoined from contacting in any way any individual or company which was a customer or manufacturer of plaintiff during defendant's employment with plaintiff, which involves the same product or service that defendant was involved in while he worked for plaintiff, but only if defendant gained the relationship with this customer or manufacturer through new leads he acquired during his work for plaintiff.  Defendant is also enjoined from using in any way plaintiff's confidential information that defendant gained during his employment with plaintiff.

3.     The bond [Docket No. 10] posted in accordance with the Temporary Restraining Order shall be continued in accordance with Rule 65(c); and no additional bond shall be required.

4.     This Order shall remain in effect until further order of this Court dissolving this Temporary Injunction.

DATED:   September 5, 2006                s/ John R. Tunheim
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
    United States District Judge